UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES L. DICKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-cv-00267-NCC |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of James L. Dickson ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. No. 16), and Defendant has filed a brief in support of the Answer (Doc. No. 21). The Parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. No. 15).

## I. PROCEDURAL HISTORY

Plaintiff filed his application for SSI on September 7, 2012 (Tr. 78, 139-44). Plaintiff was initially denied on November 2, 2012, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 5-9, 69-78, 81-85, 88-90). After a hearing, by decision dated September 19, 2014, the ALJ found Plaintiff not disabled (Tr. 10-28). On December 28,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2015, the Appeals Council denied Plaintiff's request for review (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 7, 2012, the application date (Tr. 15). The ALJ found Plaintiff has the severe impairment of borderline intellectual functioning but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-16). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations (Tr. 18). He can only understand, remember, and carry out simple, repetitive tasks (*Id.*). He can only have occasional interaction with supervisors, co-workers, and the public (*Id.*). He can only make simple, work-related decisions, and he can only tolerate occasional change in work location (*Id.*). The ALJ found Plaintiff has no past relevant work, but that there are jobs that exist in significant numbers in the national economy that he can perform, including housekeeper, dishwasher, and cleaner (Tr. 24-25). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 25). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the

claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874

n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff asserts that (1) the ALJ erred by not discussing listing 12.05 concerning intellectual disabilities and in finding that Plaintiff did not meet the requirements of listing 12.05B; and (2) the ALJ erred in her RFC determination by misconstruing Plaintiff's past work, by giving little weight to Plaintiff's treating/examining psychologist's RFC assessment, by not considering every medical opinion of evidence in violation of 20 C.F.R. 416.927(c), by basing the RFC on the opinions of non-treating, non-examining physicians alone, and by failing to consider Plaintiff's ability to sustain ongoing concentration and persistence (Doc. No. 16 at 4, 5). For the following reasons, the Court finds that Plaintiff's argument is without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

### A. LISTING 12.05

Plaintiff first asserts that the ALJ erred by not specifically discussing listing 12.05 concerning intellectual disabilities and by finding that Plaintiff did not meet the requirements of

5

listing 12.05B (Doc. No. 16 at 4). At step three, the ALJ found Plaintiff did not meet or medically equal the criteria of listing 12.02 (Tr. 16). Although the ALJ did not address listing 12.05,"[t]he ALJ's failure to identify and analyze the appropriate listing, although error, may not by itself require reversal so long as the record otherwise supports the ALJ's overall conclusion." *See Brown v. Colvin*, 825 F.3d 936, 940 (8th Cir. 2016). "The claimant has the burden of proving that his impairment meets or equals a listing." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (internal quotations and citations omitted). A claimant is disabled pursuant to section 12.05B when he has (1) an intellectual disability characterized by significantly subaverage general intellectual functioning with deficits in adapting functioning manifested before age 22; and (2) a "valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B. At issue in this case is whether Plaintiff's IQ scores meet the listing criteria. Social security regulations require that IQ test results be sufficiently current to be considered "valid." See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(D)(10). IQ test results obtained between the ages of 7 and 16 should be considered current for 4 years when the tested IQ is less than 40 and for 2 years when the IQ is 40 or above. *Id.* IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above. *Id.*

Plaintiff's valid IQ scores do not meet the listing criteria. Plaintiff underwent cognitive testing at age 6, resulting in a verbal IQ of 60, a performance IQ of 60 and a full scale IQ or 56 (Tr. 166). Further cognitive testing at age 10 resulted in a verbal IQ of 55, a performance IQ of 75, and a full scale IQ of 62 (Tr. 227). These tests are well beyond the date to be considered an accurate assessment of Plaintiff's current IQ level and, therefore, not valid under the applicable

6

social security regulations. More recent testing from 2013 resulted in a verbal IQ of 70, a perceptual reasoning IQ of 73, working memory IQ of 66, processing speed IQ of 74, and a full scale IQ of 65 (Tr. 276). These scores, though considered valid, do not meet the medical criteria of 12.05B as none of Plaintiff's IQ scores were below 59. Accordingly, the ALJ's failure to address the requirements of 12.05B was harmless as Plaintiff fails to meet the listing's requirements and, as addressed in more detail below, the record supports the ALJ's overall conclusion. *See Ruffin v. Colvin,* No. 4:10CV1736 HEA, 2013 WL 5105378, at *3 (E.D. Mo. Sept. 12, 2013); *Tobar v. Astrue*, No. 4:11 CV 1939 DDN, 2012 WL 4936111, at *6-*8 (E.D. Mo. Oct. 17, 2012).

**B. RFC DETERMINATION**

Next, Plaintiff asserts that the ALJ erred in her RFC determination by misconstruing Plaintiff's past work, by giving little weight to Plaintiff's treating/examining psychologist's RFC assessment, by not considering every medical opinion of evidence in violation of 20 C.F.R. 416.927(c), by basing the RFC on the opinions of non-treating, non-examining physicians alone, and by failing to consider Plaintiff's ability to sustain ongoing concentration and persistence (Doc. No. 16 at 5).

The Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.' " *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004)

7

(quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

### 1. Part Time Work

First, Plaintiff asserts that the ALJ erred in her RFC determination because the ALJ improperly relied on Plaintiff's past work (Doc. No. 16 at 6). Specifically, Plaintiff asserts that although the ALJ found Plaintiff "has no past relevant work," the ALJ relied heavily on Plaintiff's prior work as a busboy at Incredible Pizza and Plaintiff's sister's testimony about this work (*Id.*).

The Court finds that the ALJ properly relied on Plaintiff's part-time work, and on the evidence regarding Plaintiff's prior part-time work, including Plaintiff's sister's testimony. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date, September 7, 2012 (Tr. 15). However, the ALJ noted that Plaintiff's earnings record showed earnings in the third quarter of 2012 from Incredible Pizza Company below the level required to be considered substantial gainful activity (*Id.*). The ALJ further addressed Plaintiff's part-time work in her RFC determination, noting:

> In a work activity report, the claimant indicated that he worked from November 2011 through July of 2012 (four days a week for five hours a day) at a restaurant as a busboy with duties that included cleaning and bussing tables, lifting trays and pushing a cart. He reported lifting up to 20 pounds, frequently lifting about 10 pounds, walking for three and a half hours, standing for four hours, handling, grabbing/grasping big objects for half an

8

hour, reaching for four hours and writing, typing, handling small objects for three hours (Tr. 19).

The ALJ also found that, "[t]he testimony of the claimant's sister was instructive and supported the residual functional capacity" (Tr. 24). Specifically, the ALJ noted, "[s]he testified that he was capable of performing his job . . . even without her being there, never needed extra breaks and got along well with everyone" (*Id.*). The ALJ further supported the RFC finding in large part due to Plaintiff's "demonstrated ability perform unskilled activity successfully without any need for accommodation . . . [and] his sister's testimony as to his work functioning" (*Id.*).

Plaintiff's sister testified that she "was able to get [Plaintiff] on" and helped him complete the application for his part time job as a busboy at the Incredible Pizza Company (Tr. 63-64). Plaintiff's sister also testified that Plaintiff worked the same hours that she did primarily so that they could "travel back and forth to work together" (Tr. 65). When asked if she thought that Plaintiff could have worked without her there, Plaintiff's sister answered in the affirmative (*Id.*). Specifically, she stated, "[H]e was fine. He got along with everybody. Everyone knew what type of person he was, so there was always someone there to assist him if he needed help. And there was always someone there to break it down to him if he didn't understand" (*Id.*). Except for this extra assistance, Plaintiff's sister testified that Plaintiff did not require any extra breaks and his work did not provide him with any special accommodation (Tr. 66-67). Plaintiff also testified regarding his work experience, stating, in relevant part, that he left his job because he had a hard time keeping up (Tr. 39).

Part-time work may be relevant to the evaluation of disability even if the work did not qualify as substantial gainful activity. *See* 20 C.F.R. § 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). *See also Zenker v. Bowen*, 872 F.2d 268, 270 (8th Cir. 1989) (finding that a

9

claimant could perform substantial gainful activity, in part based on the claimant's part-time work). Further, "[l]ay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). *See also Nowling v. Colvin,* 813 F.3d 1110, 1121 (8th Cir. 2016) (Although not a medical source, a lay witness may testify to the severity of a claimant's impairment and such testimony "is evidence the ALJ is to consider in applying the five-step sequential analysis"). Therefore, the ALJ not only *could* consider the sister's testimony regarding Plaintiff's past work, she was *required* to do so once it was offered by Plaintiff. Although Plaintiff asserts that Plaintiff's sister may have misconstrued Plaintiff's counsel's question regarding Plaintiff's need for accommodation, Plaintiff's counsel chose not to clarify the question or issue with Plaintiff's sister. Furthermore, Plaintiff's sister testified that Plaintiff could have worked without her there and that he did not require any extra breaks (Tr. 15).

Plaintiff also argues that the ALJ improperly discounted Plaintiff's testimony that he left his job because he had a tough time keeping up. In fact, the ALJ specifically addressed Plaintiff's testimony regarding this point, stating Plaintiff "testified that he worked for about a year for the Incredible Pizza Company but left because he had a hard time keeping up with the work" (Tr. 17). The ALJ then continued by addressing the testimony of Plaintiff's mother as well as the testimony of Plaintiff's sister (Tr. 17-18). Although the ALJ does not refer to Plaintiff's testimony on this matter, the ALJ clearly considered it and the Court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). Accordingly, the Court finds the ALJ properly considered Plaintiff's part-time work and evidence thereof, including Plaintiff's sister's testimony.

### 2. Medical Opinion Evidence

Next, Plaintiff asserts that the ALJ erred by failing to appropriately consider the medical opinion evidence of record (Doc. No. 16 at 7). Specifically, Plaintiff argues that the ALJ's RFC is flawed because it is not based on any treating or examining source (*Id.*). Instead, Plaintiff asserts, the ALJ should have granted Dr. Alan Politte's ("Dr. Politte") opinion controlling weight as a treating physician's opinion, and should have considered and assigned weight to the consultative examinations conducted in 2006 and 2010 (*Id.* at 8, 9).

#### a. Dr. Politte's Opinion

In a "Medical Opinion Re: Ability to do Work-Related Activities (Mental)" dated September 18, 2013, Dr. Politte listed Plaintiff's clinical diagnosis as "mild retardation" (Tr. 286). Dr. Politte indicated that Plaintiff's condition would never cause him to be absent from work (*Id.*). Dr. Politte opined that Plaintiff had "no useful ability to function" in the following areas: understand and remember detailed instructions; and set realistic goals or make plans independently of others (*Id.*). Dr. Politte further opined that Plaintiff was "unable to meet competitive standards" in the following abilities and aptitudes: remember work-like procedures; maintain attention for two hour segment; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; deal with normal work stress; carry out detailed instructions; and deal with stress of semiskilled and skilled work (Tr. 285-86). The ALJ also noted that Plaintiff would be seriously limited in a number of areas including, relevant to the current issue, understanding and remembering very short and simple

11

instructions (Tr. 285). However, Dr. Politte also indicated that Plaintiff had the limited but satisfactory ability to carry out very short and simple instructions (*Id.*).

The Court finds that the ALJ gave proper weight to the opinion of Dr. Politte. The ALJ correctly determined that Dr. Politte was not a treating physician under the applicable rules (Tr. 23). A "treating source" is defined by social security regulations as the claimant's "own physician psychologist, or other acceptable medical source" who provides the claimant with medical treatment or evaluation on an ongoing basis. 20 C.F.R. § 416.902. However, Dr. Politte only examined Plaintiff twice and for the express purpose of developing evidence to support Plaintiff's disability benefits application (Tr. 21, 23, 274). *See* 20 C.F.R. § 416.902 ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.").

The ALJ afforded Dr. Politte's opinion "little weight," finding Dr. Politte's opinion (1) not supported by the record as a whole, and (2) not supported by his own observations and objective medical findings (Tr. 23). Specifically, the ALJ highlighted the inconsistency of Dr. Politte's opinion with the testimony of Plaintiff's sister, discussed in more detail above, indicating that Plaintiff "never required extra rest periods, had not trouble working a five or six hour shift and did not need extra help with this job" (*Id.*). When a physician's opinion is "inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight." *Krogmeier*, 294 F.3d at 1023. *See also* 20 C.F.R. § 416.927 ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion"). The ALJ also noted Dr. Politte's opinion contained internal inconsistencies, including the doctor's opinion that

Plaintiff was seriously limited in his ability to understand and remember very short and simple instructions but that he was capable of carrying out very short and simple instructions (Tr. 23, 285). *See Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (internal quotation marks omitted) ("Physician opinions that are internally inconsistent are entitled to less deference than they would receive in the absence of inconsistencies."). Instead, the ALJ indicated that Dr. Politte did not review Plaintiff's school records and "relied quite heavily on the subjective report and symptoms and limitations provided by the [Plaintiff]" (Tr. 23). *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (Commissioner may give physician's opinion less deference when it is based on claimant's subjective complaints rather than objective medical evidence).

Moreover, even if Dr. Politte was considered a bona fide treating physician, as is the case here, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." *Swarnes v. Astrue*, Civ. No. 08–5025–KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted). *See also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (finding that the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration).

### b. Dr. DeVore's and Dr. Morgan's Opinions

To the extent Plaintiff argues that the ALJ's evaluation of the opinions of Dr. Kyle DeVore, Ph.D. (Tr. 259-72), consultative examiner, and Dr. James Morgan, Ph.D. (Tr. 72-75), a state agency single decision maker, was inconsistent with the ALJ's determination that Plaintiff's subjective complaints were not credible, Plaintiff misconstrues the ALJ's finding. Although these doctors found aspects of Plaintiff's statements credible, specifically his self-reported activities of daily living, neither doctor found Plaintiff's subjective allegations of disabling

13

limitations credible considering the mild nature and limited extent of restrictions each found Plaintiff to possess in their opinions (Tr. 72-73, 270-71).

### c. Ms. Bruner's Opinion

Plaintiff also asserts that the ALJ failed to review the opinions of consulting psychologist Alison Bruner ("Ms. Bruner") from 2006 and 2010 (Tr. 249-53, 254-56). Indeed, the ALJ did not mention the 2006 evaluation and only cited to, but did not discuss, the 2010 evaluation (*See* Tr. 23). However, Plaintiff fails to indicate in what way the ALJ failed to consider these opinions. "An ALJ is not required to discuss every piece of evidence submitted" and these opinions date well before the relevant time period. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (internal quotation marks omitted). Furthermore, upon review of the psychological evaluations, the Court finds that that ALJ incorporated several limitations found therein. For example, in the most recent 2010 opinion, Ms. Bruner diagnosed Plaintiff with mild mental retardation and indicated "[h]e would be best suited to vocational training to learn a skill or to non complex [sic] types of employment such as dishwashing, dietary, or janitorial services" (Tr. 256). The ALJ similarly limited Plaintiff to simple, repetitive tasks, simple, work-related decisions, and only occasional changes in work location (Tr. 18). Accordingly, the Court finds the ALJ did not commit reversible error in her failure to discuss the weight of these opinions.

### d. RFC Supported by Medical Opinion Evidence

Finally, Plaintiff asserts that the ALJ erred in her RFC determination by basing the RFC on the opinions of non-treating, non-examining physicians alone. However, Plaintiff misconstrues the standard. Indeed, although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth

Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704, *quoting Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591. Express consideration of state agency physicians is sufficient to satisfy this standard. *See Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016).

The Court finds that the ALJ properly supported her residual functional capacity determination with "some" medical evidence. Specifically, the ALJ appropriately addressed the medical records and opinion evidence from Dr. Politte. Further, the ALJ considered the medical opinion evidence from Dr. DeVore (Tr. 259-72), consultative examiner, and Dr. Morgan (Tr. 72-75), a state agency single decision maker, affording their opinions "some weight" (Tr. 22).

After reviewing the evidence submitted as a part of Plaintiff's prior SSI application, Dr. DeVore issued a case analysis on September 3, 2010 regarding Plaintiff's medically determinable impairments and their severity (Tr. 259-72). Dr. DeVore determined that Plaintiff had the medically determinable impairment of mild mental retardation (Tr. 262). Dr. DeVore found Plaintiff moderately limited in the following abilities: to understand and remember detailed instructions; to carry out detailed instructions; and to respond appropriately to changes in the work setting (Tr. 270-71). Dr. DeVore further opined that Plaintiff had difficulty with talking, completing tasks, concentration, and understanding (Tr. 269). Dr. DeVore concluded

15

that because Plaintiff would be able to "ask simple questions, understand/carry out simple instructions/directions[,h]e would be able to do at least simple unskilled tasks" (Tr. 271).

On November 1, 2012, Dr. Morgan reviewed the evidence in Plaintiff's file in connection with Plaintiff's current SSI application (Tr. 72-75). In his assessment, Dr. Morgan concluded that while Plaintiff was diagnosed with mental retardation, "claimant would be able to learn a skill and do non-complex employment such as food services and janitorial services" (Tr. 72). He opined moderate limitations in activates of daily living and maintaining concentration, persistence, or pace, and mild limitations in maintaining social functioning (*Id.*). Specifically, Dr. Morgan found Plaintiff moderately limited in the following abilities: to understand and remember detailed instructions; to carry out detailed instructions; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to respond appropriately to changes in the work setting; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others (Tr. 74-75).

Dr. DeVore and Dr. Morgan are highly qualified experts who offered opinions consistent with the record as a whole. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence); *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2012) (State agency psychologist's opinion supported the ALJ's finding that claimant could work despite his mental impairments); *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) (finding the ALJ did not err in considering State agency psychologist's opinion along with the medical evidence as a whole). In her RFC determination, the ALJ clearly took into account the various limitations indicated by these experts, restricting Plaintiff with the following nonexertional limitations: he can only understand, remember, and carry out simple, repetitive

tasks; he can only have occasional interaction with supervisors, co-workers, and the public; he can only make simple, work-related decisions, and he can only tolerate occasional change in work location (Tr. 18).

Accordingly, the Court finds that the ALJ's RFC was based on substantial evidence as, in addition to Plaintiff's school records, activities of daily living, function reports, and hearing testimony, the ALJ supported her residual functional capacity determination with some medical evidence.

### 3. Sustained Concentration and Persistence

Plaintiff further asserts that the ALJ failed to consider Program Operations Manual Systems ("POMS") DI 24510.061B.2 regarding Plaintiff's sustained concentration and persistence (Doc. No. 16 at 8). Specifically, Plaintiff argues that the ALJ failed to consider how Plaintiff would be able to perform work "on a sustained basis" as required in POMS DI 24510.061B.2 (*Id.*). POMS DI 24510.061B.2 states:

> a. The individual's ability to sustain ongoing mental performance for a full workday is essential. These may be evaluated through:
>
>> -Medical history and reports, and
>>
>> -Reports of performance at past work, recent work attempts, recreational or volunteer activities, or vocational evaluations.
>
> b. Limitations in these areas may be demonstrated in typically less demanding settings, such as sheltered work, vocational training, or school (i.e., in any situation demanding performance of tasks requiring concentration or task persistence).
>
> c. Use care in inferring an individual's ability to sustain the mental demands of work in a competitive setting from his/her performance in a less demanding setting, such as sheltered work.

17

"Although POMS guidelines do not have legal force, and do not bind the Commissioner, [the Eighth Circuit] has instructed that an ALJ should consider the POMS guidelines." *Hesseltine v. Colvin*, 800 F.3d 461, 465 (8th Cir. 2015).

The Court finds there to be sufficient evidence that the ALJ considered the POMS Guidelines regarding Plaintiff's ability to sustain ongoing mental performance. In her RFC determination, the ALJ limited Plaintiff such that Plaintiff can only understand, remember, and carry out simple, repetitive tasks; he can only make simple work-related decisions; and he can only tolerate occasional change in work location (Tr. 18). These limitations appropriately account for Plaintiff's intellectual function and, therefore, his ability to sustain ongoing mental performance for a full workday. *See Gragg v. Astrue*, 615 F.3d 932, 941 (8th Cir. 2010). In determining Plaintiff's RFC, the ALJ provided a detailed analysis in which she reviewed Plaintiff's part-time work, the hearing testimony, function reports, and Plaintiff's educational records (Tr. 18-24). As addressed in more detail above, the ALJ also reviewed and properly weighed the various medical opinions of record in formulating her RFC determination. *C.f. Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003) (finding no evidence that an ALJ considered the applicable POMS guidelines where the ALJ disregarded the POMS guidelines by improperly discounting the medical opinions of plaintiff's treating mental health providers).

## V. CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 28th day of March, 2017.

                                                  /s/ Noelle C. Collins  
                                                NOELLE C. COLLINS  
                                                UNITED STATES MAGISTRATE JUDGE